```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| RENE D. EDWARDS, | 1:13-cv-00214-NLH-JS |
| Plaintiff, | **OPINION** |
| v. | |
| STATE OF NEW JERSEY, et al., | |
| Defendants. | |

**APPEARANCES**:

KATHERINE D. HARTMAN
ATTORNEYS HARTMAN, CHARTERED
68 E. MAIN STREET
MOORESTOWN, NJ 08057-1590
    On behalf of Plaintiff

NICOLE ELIZABETH ADAMS
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
25 MARKET STREET
P.O. BOX 112
TRENTON, NJ 08625
    On behalf of Defendants

**HILLMAN, District Judge**

    This case concerns claims by Plaintiff that Defendants violated his constitutional rights when he was beaten and raped by his cellmate in South Woods State Prison ("South Woods") in Bridgeton, New Jersey. Presently before the Court are the motions of two defendants, the Commissioner of the New Jersey Department of Corrections, Gary M. Lanigan, and the former Warden of South Woods, Christopher Holmes, to dismiss Plaintiff's claims against them. For the reasons expressed

below, Defendants' motions will be granted.

## BACKGROUND

According to Plaintiff's second amended complaint (Docket No. 92), at some point in 2011 Plaintiff was assigned Raisona Boyd as his cellmate at South Woods. On December 14, 2011, Plaintiff complained to Officer Williams that Boyd had touched his rear end, making him extremely uncomfortable. Even though Williams stated that she wrote an accident report, no action was taken, and Boyd remained in the cell with Plaintiff.

On the morning of December 27, 2011, Boyd learned that his parents had passed away. Apparently out of grief, Boyd began throwing things around in the cell, causing Plaintiff sufficient alarm that he informed the guards of the situation and expressed concerns for his personal safety. No action was taken, and Boyd remained in the cell with Plaintiff. Boyd continued to act aggressively and violently towards Plaintiff throughout the day. Although Boyd was removed from the cell at one point during the day, he was returned to the cell soon after.

Around 11 p.m. that night, Plaintiff asked Boyd to stop throwing his belongings, which led to an argument culminating in Boyd using a metal lock wrapped in a sock to beat Plaintiff in the face and neck. The altercation continued until other inmates made enough noise to alert Officer Franchetta, the Correctional Officer on duty, who arrived in time to see blood

spattered on the wall and floor, and Plaintiff nursing a bleeding mouth with broken teeth. Without radioing for backup or taking any action to protect Plaintiff, Officer Franchetta left Boyd in the cell with Plaintiff while he went to seek help. After Officer Franchetta left, Boyd anally raped Plaintiff while he lay helpless and injured.

After multiple reconstructive surgeries and many months of intensive medical treatment, Plaintiff filed the instant complaint naming as defendants Commissioner Gary M. Lanigan, Warden Christopher Holmes, and each of the SCOs on duty during the relevant time period. Plaintiff claims that the SCOs were deliberately indifferent to his health and safety in violation of the Eighth Amendment, and that Lanigan and Holmes violated his Eighth Amendment rights by failing to properly supervise the SCOs and by failing to take any action to correct the dangerous situation Plaintiff found himself in.

Lanigan and Holmes have moved to dismiss Plaintiff's claims against them, arguing that his complaint simply names them as defendants, but does not contain any facts to satisfy the proper pleading requirements for viable supervisory liability claims. Plaintiff has opposed both motions.[1]

---

[1] Plaintiff brought claims against Lanigan and Holmes in their official and individual capacities. Defendants argue, and Plaintiff agrees, that Plaintiff's claims against them in their official capacities must be dismissed. See Betts v. New Castle

## DISCUSSION

**A.   Subject matter jurisdiction**

Because Plaintiff has brought claims pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights, this Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

**B.   Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 562

---

Youth Development Center, 621 F.3d 249, 254 (3d Cir. 2010) (explaining that because state governments and their subsidiary units are immune from suit in federal court under the Eleventh Amendment, individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because official-capacity suits generally represent only another way of pleading an action against the state).

4

F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'"  Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6).  First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129

5

S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief.  Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.,

181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

    **C.   Analysis**

Plaintiff has brought his Eighth Amendment claims pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"By its terms, of course, the statute creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985). Thus, "[t]o establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a

7

person acting under color of state law." Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993).

A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 828 (1994). State actors are liable only for their own unconstitutional conduct, and government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

The Court of Appeals for the Third Circuit has articulated the standard for assessing the viability of supervisory liability claims against prison officials:

> [There are] two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. First, liability may attach if they, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm. Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct. "Failure to" claims - failure to train, failure to discipline, or, . . ., failure to supervise - are generally considered a subcategory of policy or practice liability.

Barkes v. First Corr. Med., Inc., 766 F.3d 307, 317 (3d Cir. 2014), rev'd on other grounds sub nom. Taylor v. Barkes, --- U.S. ----, 135 S. Ct. 2042, 192 L.Ed.2d 78 (2015) (per curiam)

8

(internal quotations and citations omitted).

With regard to Eighth Amendment claims, the Third Circuit has directed that a complaint must "identify specifically what it is that [a supervisory official] failed to do that evidences his deliberate indifference.  Only in the context of a specific defalcation on the part of the supervisory official can the court assess whether the official's conduct evidenced deliberate indifference and whether there is a close causal relationship between the 'identified deficiency' and the 'ultimate injury.'" Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989), cited with approval in Barkes, 766 F.3d at 3017.  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence," but "[a]llegations of participation or actual knowledge and acquiescence [] must be made with appropriate particularity." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also Mark v. Patton, 2017 WL 2557412, at *2 (3d Cir. 2017) (citing Barkes, 766 F.3d at 317) (being unpersuaded that "sweeping accusations about policies, without identifying one in particular, are sufficient to state a claim").

In this case, Plaintiff claims that Lanigan and Holmes were deliberately indifferent to his substantial risk of harm because they: (1) had a duty to provide humane conditions of confinement and to take reasonable measures to guarantee the safety of

9

inmates (SAC ¶¶ 2, 10); (2) the report of Plaintiff's first complaint about Boyd drafted by SCO Williams was reviewed and approved by some unspecified and un-delineated chain of command (id. ¶ 16); (3) neither Williams nor her superiors took action to investigate Plaintiff's concerns (id. ¶ 17); (4) Boyd was not removed from the cell pursuant to prison policy when he experienced extreme stress, grief, or duress upon learning of his parents' death (id. ¶ 19)[2]; and (5) the "individual supervisory Defendants," which presumably include Lanigan and Holmes, knew of Plaintiff's complaints about his cellmate but they ignored their policies, acquiesced to their subordinates' improper actions, and failed to supervise them (id. ¶¶ 52-55).

Lanigan and Holmes argue that these allegations are insufficient to meet the pleading requirements for supervisory liability claims for Eighth Amendment violations, as set forth by Iqbal and Barkes. Plaintiff argues that his claims are sufficient, and because discovery has not yet commenced, Plaintiff does not have the ability to plead his claims with more detail due to lack of information.

The Court agrees with the defendants that Plaintiff's supervisory liability claims are not sufficient to proceed as they are pleaded at this time. There is no need to "unpack"

---

[2] This allegation is upon "information and belief" and cites no particular government policy or its contents.

10

plaintiff's factual allegations from legal conclusions because the second amended complaint only asserts conclusions as to the moving defendants.  The most telling example of this insufficiency is that Plaintiff's claims are the same for both Lanigan and Holmes.  A complaint containing identical allegations for two supervisory prison officials clearly fails to specify each official's "specific defalcation" so that it can be determined whether either official was personally involved in the events leading to Plaintiff's alleged Eighth Amendment violations.

    Lanigan is the commissioner of the entire Department of Corrections in New Jersey, while Holmes was the warden of South Woods.  The second amended complaint alleges that they (along with all the other supervisors) were aware of Plaintiff's complaint to Williams but there are no factual allegations to support that conclusion.  Accepting as true that a chain of command exists within the prison system, Plaintiff's complaint is silent as to how far up the chain of command his initial report to SCO Williams should have gone so that Lanigan or Holmes would have become aware of Plaintiff's concerns.  Plaintiff's complaint is equally silent on the content of the policies that he alleges Lanigan and Holmes ignored, which resulted in Plaintiff's injuries.  The second amended complaint simply concludes in the most basic way that all the supervisors

all the way to the top knew of the risk and failed to act. This is insufficient as a matter of law to meet the Iqbal, 556 U.S. at 676, and the long line of Third Circuit case, such as Barkes, 766 F.3d at 317 and Sample, 885 F.2d at 1118, which require more.

Plaintiff's argument that he cannot plead supervisory liability claims with more specificity without the benefit of discovery is an understandable concern, but these same precedents do not permit conclusory supervisory liability claims for alleged constitutional violations to proceed on the hope, or even a hunch, that discovery will reveal viable claims. Instead, the Federal Rules of Civil Procedure, and specifically Rules 15 and 21, provide the mechanism for adding claims and parties that arise during the course of discovery that were unknown or unknowable prior to the discovery process.[3]

The Third Circuit "supports the notion that in civil rights cases district courts must offer amendment - irrespective of whether it is requested - when dismissing a case for failure to state a claim unless doing so would be inequitable or futile," Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482

---

[3] Fed. R. Civ. P. 15 permits a plaintiff to amend his complaint any time that "justice so requires," even during trial, and Fed. R. Civ. P. 21 provides, in relevant part, "On motion or on its own, the court may at any time, on just terms, add or drop a party." We express no opinion on the merits of any future application to amend the pleadings.

F.3d 247, 251 (3d Cir. 2007), and it is evident that permitting Plaintiff to file amended supervisory liability claims against Lanigan and Holmes now would be futile.  If discovery reveals specific facts that would allow Plaintiff to plead supervisory liability claims against Lanigan or Holmes in compliance with the pleading standards set forth above, Plaintiff may seek leave to file an amended complaint at that time.

## **CONCLUSION**

For the reasons expressed above, Plaintiff's claims against defendants Gary M. Lanigan and Christopher Holmes must be dismissed without prejudice.  An appropriate Order will be entered.


Date:  July 18, 2017                   s/ Noel L. Hillman        
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.