UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
RENE D. EDWARDS,                    :
                                    :
        Plaintiff,                  :   Civ. No. 13-214 (NLH)(JS)
                                    :
    v.                              :   OPINION
                                    :
COMMISSIONER GARY M.                :
LANIGAN, et al.,                    :
                                    :
        Defendants.                 :
_____:

APPEARANCES:

Katherine D. Hartman, Esq.
Attorneys Hartman, Chartered
68 East Main Street
Moorestown, NJ 08057
    Counsel for Plaintiff

Christopher Porrino, Esq.
Attorney General of New Jersey
R.J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625
    Counsel for Defendants

HILLMAN, District Judge

    This case concerns an assault that Plaintiff Rene D. Edwards, an inmate formerly incarcerated at South Woods State Prison, suffered at the hands of his cellmate. In the Second Amended Complaint, Plaintiff alleges that the correctional officer defendants on duty the evening of the assault were deliberately indifferent to Plaintiff's health and safety in

1

failing to intervene in violation of the Eighth Amendment.[1]  At issue is Defendants' Motion for Summary Judgment, which is ripe for adjudication.  The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this case concerns a federal question.  For the reasons that follow, the Court will grant the Motion.

I.  Factual Background

Plaintiff was an inmate formerly incarcerated in various New Jersey Department of Corrections ("NJDOC") facilities throughout the state from 2010 through 2014.  ECF No. 117-1, Defs' Statement of Facts ("SOF"), ¶ 1; ECF No. 122-1, Pl's Response to Statement of Facts ("RSOF"), ¶ 1.  At all times relevant to the Second Amended Complaint, Plaintiff was incarcerated at South Woods State Prison in Bridgeton, New Jersey.  SOF, ¶ 2; RSOF, ¶ 2.

Plaintiff alleges that he complained to whom he believed to be Defendant Senior Corrections Officer Yvonne Williams that his cellmate touched his buttocks on or about December 14, 2011.  SOF, ¶ 3; RSOF, ¶ 3.  Approximately two weeks later, on or about December 27, 2011, Plaintiff's cellmate began acting

---

[1] Plaintiff also brought failure to supervise claims against Defendants Gary Lanigan, the commissioner of the New Jersey Department of Corrections, and Christopher Holmes, the administrator of South Woods State Prison.  See ECF No. 92.  The Court dismissed these defendants by opinion and order dated July 18, 2017.  See ECF Nos. 115, 116.

2

aggressively. SOF, ¶ 4; RSOF, ¶ 4. Plaintiff complained to Defendants Sergeant Rodney Joynes and Lieutenant Joel Taylor about his cellmate's behavior, but his cellmate was returned to the cell that night. SOF, ¶ 5, RSOF, ¶ 5. In the early morning hours of December 28, 2011, Plaintiff was assaulted by his cellmate, during which his jaw was broken. SOF ¶ 6; RSOF ¶ 6. According to Plaintiff, Defendant Senior Corrections Officer Franchetta heard Plaintiff's cries for help and responded to his cell, but then left the cell to call for backup, during which time Plaintiff was sexually assaulted by his cellmate. SOF ¶¶ 7-8; RSOF ¶¶ 7-8.

Both inmates were removed from the cell, and Plaintiff was taken to be examined medically. SOF ¶¶ 11-12; RSOF ¶¶ 11-12. The nurse on duty noted that Plaintiff presented with swelling of his face, limited jaw movement, active bleeding, and missing teeth, but that he denied suffering any other injuries. SOF ¶¶ 13-14; RSOF ¶¶ 13-14. Plaintiff was transported to South Jersey Regional Medical Center for further treatment for a fractured jaw; Plaintiff was not diagnosed with any other injuries. SOF ¶¶ 15-17; RSOF ¶¶ 15-17. After the incident, both Plaintiff and his cellmate refused protective custody. SOF ¶ 24; RSOF ¶ 24.

In accordance with N.J.A.C. 10A:8-1.1 to -3.6, all NJDOC facilities in which Plaintiff was incarcerated from the time of the alleged assault on December 28, 2011, until he filed the

3

Complaint on January 11, 2013, have adopted the Inmate Handbook outlining the Inmate Remedy System Procedure. SOF ¶ 25; RSOF ¶ 25. Inmates incarcerated in NJDOC prison facilities are provided a copy of the Inmate Handbook detailing the Inmate Remedy System Procedure during their orientation. SOF ¶ 26; RSOF ¶ 26.

The Inmate Remedy System Procedure is a mechanism for inmates to lodge complaints, document problems, and offer suggestions to the correctional facility administration. SOF ¶ 27; RSOF ¶ 27. Inmates are required to utilize the multi-part Inmate Remedy System before applying to the courts for relief. SOF ¶ 29; RSOF ¶ 29. Inmate System Forms are available in the housing units of some NJDOC facilities, or inmates can request the forms from their housing unit officer, social worker, or the Inmate Law Library. SOF ¶ 30; RSOF ¶ 30. Once an inmate completes a Remedy Form, he or she must place the form in the appropriate Drop Box located in each housing unit. SOF ¶ 31; RSOF ¶ 31. If an inmate is unable to access a Drop Box to submit his or her form because the inmate is in closed custody housing or has a limiting medical condition, the unit social worker or housing officer will deposit the form in the Drop Box. SOF ¶ 32; RSOF ¶ 32.

Plaintiff admits that he was familiar with the Inmate Remedy System. SOF ¶ 39; RSOF ¶ 39. In fact, Plaintiff has

4

utilized the Inmate Remedy System approximately thirty-eight (38) times before. SOF ¶ 41; RSOF ¶ 41. Plaintiff, however, admits that he did not file an Inmate Remedy Form at any time about his assault on December 28, 2011. SOF ¶ 39; RSOF ¶ 39. Although Plaintiff submitted thirty-eight (38) Remedy Forms across three different prisons between the date of his alleged assault on December 28, 2011, and the date on which he filed his Complaint, none of the grievances allege that NJDOC, any of its facilities, or any of its employees failed to protect Plaintiff from the alleged assault at issue in this litigation. SOF ¶ 41; RSOF ¶ 41.

II. Standard of Review

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A disputed fact is material when it could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 250. The Court should view the facts in the light most favorable to the non-moving party and

make all reasonable inferences in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a genuine issue concerning any material fact. See Celotex Corp. v. Carrett, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." Hugh, 418 F.3d at 267 (citing Anderson, 477 U.S. at 251).

If the court determines that "the record taken as a whole could not lead a rational trier or fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

A thorough and comprehensive review of the docket makes clear that no material fact is in dispute as to the dispositive

6

issue in this case. In Plaintiff's response to Defendants' Statement of Material Facts, Plaintiff occasionally disputes or disputes in part facts relating to the operation of the inmate grievance system as a "legal conclusion" or "no personal knowledge." To dispute an alleged undisputed fact under Federal Rule of Civil Procedure 56, however, the non-moving party must provide evidence to support the dispute. See Fed. R. Civ. P. 56(e). Stating that the non-moving party lacks "personal knowledge" or that a fact is a "legal conclusion" fails to show sufficiently that a genuine issue exists for trial. As such, summary judgment is appropriate.

III. Discussion

In support of the Motion for Summary Judgment for failure to exhaust administrative remedies, Defendants have submitted information related to the administrative complaints filed by Plaintiff after the assault. See ECF No. 117-3 at 91-129. Although Plaintiff filed a number of inmate remedy forms concerning various issues, Plaintiff failed to file an inmate remedy form with respect to the assault at issue in the Second Amended Complaint.[2] Id. These facts are not in dispute.

---

[2] Plaintiff does file grievances regarding follow up medical care that appears to result from the assault. The Second Amended Complaint does not include a claim for deliberate indifference to a serious medical need or any other medical claim.

The exhaustion of administrative remedies is a mandatory prerequisite to any prisoner's filing of a civil rights action regarding prison conditions. 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). Specifically, § 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Exhaustion is a precondition for bringing suit and, as such, it is a "'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.'" Small v. Camden County, 728 F.3d 265, 270 (3d Cir. 2013).

"[T]he . . . exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner must exhaust all available administrative remedies even where the relief sought, such as monetary damages, cannot be granted through the administrative process, as long as the grievance tribunal has authority to take some responsive action. Booth v. Churner, 532 U.S. 731, 741 (2001).

8

The applicable procedural rules for properly exhausting administrative remedies "are defined not by [§ 1997e(a)], but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by [§ 1997e(a)] to 'properly exhaust.'" Jones v. Bock, 549 U.S. 199, 218 (2007). The burden of proving non-exhaustion lies with the defendants asserting the defense. Id. at 212, 216–17.

The NJDOC has established a comprehensive Inmate Remedy System, through which "inmates may formally communicate with correctional facility staff to request information from, and present issues, concerns, complaints or problems to the correctional facility staff." See N.J.A.C. 10A:1-4.1 through 4.9. The Inmate Remedy System Form is available from inmate housing units, the Social Services Department, and the law library. N.J.A.C. 10A:1-4.4(f). An aggrieved inmate must submit the Inmate Remedy System Form to the designated institutional coordinator, who refers it to the appropriate official for response. N.J.A.C. 10A:1-4.8. The Inmate Remedy System Form must be complete and legible and must include "a clear and concise statement summarizing the request." N.J.A.C. 10A:1-4.4(e). Generally, the response to a routine request is to be provided to the inmate within thirty (30) days. N.J.A.C. 10A:1-4.4(i), 10A:1-4.5(e). Where further deliberation is necessary, the initial response to the inmate shall include

9

statements that indicate that further deliberation is necessary, the nature of the deliberation required, and the time frame within which the final response shall be provided to the inmate. N.J.A.C. 10A:1-4.4(i). An inmate may appeal the initial response to the institution's administrator within ten (10) calendar days from the issuance of the initial decision, and the administrator is to respond within ten (10) business days. N.J.A.C. 10A:1-4.4(i), 10A:1-4.6. The response from the administrator completes the administrative remedy procedure. N.J.A.C. 10A:1-4.6(d). New Jersey regulations specifically provide that "[t]he comprehensive Inmate Remedy System to include a 'Routine Inmate Request' and/or 'Interview Request,' and an 'Administrative Appeal' must be utilized and fully exhausted prior to an inmate filing any legal action regarding information requests, issues, concerns, complaints, or problems." N.J.A.C. 10A:1-4.4(d).

Here, the undisputed facts establish that Plaintiff failed to file any administrative remedy as to the assault. Plaintiff, indeed, admits that he never filed an inmate grievance regarding the assault. He argues, however, that the grievance procedure was unavailable to him because he "reasonably believed that the assault . . . [was] under investigation by the SID, and that he need not have taken the additional step of filing an Inmate Remedy System Form." ECF No. 123, Pl's Opp. Br. at 8-9. In

support of his argument, Plaintiff relies on Ross v. Blake, 136 S. Ct. 1850 (2016), in which the Supreme Court of the United States remanded a civil rights action for consideration of whether any remedies were "available" to the plaintiff in light of a parallel internal investigation. 136 S. Ct. at 1862. The holding in that case, however, does not support Plaintiff's position, nor does the factual posture in Ross mirror the instant undisputed facts.

In Ross, the Court of Appeals for the Fourth Circuit held that an internal investigation was a "special circumstance" exception to the Prisoner Litigation Reform Act's requirement of exhaustion; thus, a prisoner need not exhaust the inmate grievance remedies if an internal investigation is underway. Id. at 1856. The Supreme Court rejected the concept of a "special circumstance" exception to exhaustion as an unwritten graft into the text of the PLRA and remanded the case for consideration of whether the inmate remedy system was still "available" to the plaintiff aside from the internal investigation. Id. at 1862. In doing so, the Supreme Court reiterated that the sole issue regarding exhaustion in such a context is whether the administrative remedies were "available" and outlined the three instances in which remedies would not be "available:" (1) when an administrative procedure "operates as a simple dead end with officers unable or consistently unwilling

11

to provide relief to aggrieved inmates;" (2) where the administrative remedies are so unclear that "no ordinary prisoner can make sense of what it demands;" and (3) where prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-60. None of these examples take into account the prisoner's subjective view of the availability of remedies or whether the remedy system needs to be utilized. Rather, the Ross exceptions focus on and describe the conduct of prison officials that result in a dysfunctional, or worse, corrupt grievance system.

Here, Plaintiff makes no argument that he falls under one of these three categories, nor would they appear to apply to the undisputed facts presented in the Motion. First, the administrative remedy procedure at South Woods State Prison and at other Department of Corrections facilities does not appear to operate as a dead end because Plaintiff has utilized it approximately thirty-eight times and has obtained relief through it. Second, the administrative remedy procedure is not so unclear as to be unavailable, because Plaintiff has utilized it with success before. Finally, there are simply no facts that prison officials seek to thwart the use of the grievance system at South Woods State Prison or other facilities.

Notably, in Ross, the plaintiff presented extensive evidence that the prison grievance system was unavailable to the plaintiff because prison authorities routinely dismissed inmate grievances as procedurally improper during the pendency of an internal investigation. Id. at 128-29. Ross is thus legally and factually inapposite to this case because it did not hold that an internal investigation may excuse PLRA exhaustion as Plaintiff argues and Plaintiff has presented no evidence to support the conclusion that the inmate grievance system was unavailable to Plaintiff within the meaning of the narrow exceptions in Ross. Accordingly, this Court finds that Plaintiff failed to exhaust the administrative remedies that were available to him, as he is required to do by § 1997e(a) prior to filing suit.

IV. Conclusion

The Court will grant Defendants' Motion for Summary Judgment and enter judgment in Defendants' favor and against Plaintiff. An appropriate order follows.

Dated: April 27, 2018　　　　　　　　　s/ Noel L. Hillman
At Camden, New Jersey　　　　　　　　NOEL L. HILLMAN, U.S.D.J.